The next case is the United States of America v. Maurice Ray Dupree, Mr. Zosmar. Good morning, Your Honor. Mr. Mayor, please the Court. Robert Zosmar on behalf of the government. Your Honor, if I may reserve three minutes for rebuttal. That request will be granted. Thank you. Your Honor, in this case, it's our position that the district court erred in suppressing the evidence that the government was prepared to introduce against Mr. Dupree, specifically the firearm that he threw while he was running from the police. We're in an interesting posture here because it's our position that the Supreme Court's position in Hodari D. specifically speaks to this situation. That was really, yeah, but that was dicta. The Court never held what is favorable to you in Hodari. Respectfully, I don't agree, Your Honor. What the Court did in Hodari D. was address a situation in which there was a show of force by the officers, not what we have here where there's a momentary grab followed by the flight. But in addressing how to define whether a flight from the police was a seizure by itself, the Supreme Court first analyzed what a seizure is in the context of a grab. Yeah, but the Supreme Court didn't have to make that statement, which they did in Hodari, which is favorable to your position, in adjudicating the case that was before it. It wasn't necessary. That may be true, Your Honor, but I don't know that that's for us to say because the Supreme Court did elect to analyze that case in the manner that it did. And I think we, at our peril, ignore such a clear exegesis of the law that's given to us in a 7-2 Supreme Court decision. We have any number of circuit courts which are the contrary, though. That I specifically disagree with, Your Honor. The defense in their brief here says that there are all sorts of court decisions that have gone against the government, and that is simply not so, as we explain in our reply brief. There is one case from the Fourth Circuit, Wilson, that was decided immediately after Hodari D., and really didn't even pay faithful service to the holding of Hodari D. But other than that – I read Wilson. You can't say they went against the precepts of Hodari. I mean, it's a different fact situation somewhat. Well, actually, we could get – it's a separate argument as to whether Wilson was faithful even to the part of the decision regarding a show of authority. But be that as it may, there is no decision since Wilson, circuit decision, that has addressed the scenario before the court that has gone against our position. And to the contrary, the Ninth Circuit and the Seventh Circuit and the Fourth Circuit, as we explain in our principle brief, have reached decisions on facts like these consistent with the position that we're taking. And they do it appropriately because they're being faithful to the guidance of the Supreme Court. And the last answer I was going to give, Your Honor, is that accepting Your Honor's suggestion that it may be dictum, again, as this Court has said, quote, unquote, dictum of the Supreme Court, particularly statements that are so carefully considered, are not readily ignored. We're not talking about a lower court here. This was a seven-to-do decision of the Supreme Court, which said very clearly that evidence discarded in the course of flight after an unsuccessful seizure is not to be precluded. It in fact said there's no deterrent effect from applying the exclusionary rule in that context. Why are we talking about the flight here? Doesn't the case rise and fall on the initial encounter? Well, no. The initial encounter here is a two-second grab of Mr. Dupree by the officer. Your Honor, that was an illegal seizure, though.  It was wrong to grab him at that point in time. Let me quote from what your colleague argued before the district court, quote, I think the case really rises and falls on that initial encounter, end quote. Now you're telling us the opposite. Well, I agree with that to the extent that we have to define what that initial encounter is. Do you agree with the fact that you're telling us the opposite or that he said that? No, I'm trying to be clear, Your Honor, and I appreciate the opportunity. The initial encounter, of course, is important here, and we have to decide what was that encounter. And what that encounter was was an unsuccessful seizure. It was a seizure, and it did not succeed because Mr. Dupree immediately broke away. All right, but I'm very concerned here whether that issue was waived. I mean, your colleague teed this up for the district court by saying, again, I quote, if we can say that at this point in time the defendant was arrested, the case ends at that point in time. And even more tellingly, on the motion for reconsideration, the government stated, and I quote, suppression issue in this case turns on a single question. Was Dupree seized within the meaning of the Fourth Amendment when Mabry grabbed Dupree for a mere two seconds before Dupree broke away and attempted to flee? I mean, we, in my short tenure on this Court, we have found you're able, opposing counsel, to have waived arguments in these circumstances. Why shouldn't we do so here now? Certainly, and the Court has also found on occasion that the government has waived arguments. But as we try to explain in our reply brief, there was not a waiver. We agree that our language at times in the district court could have been more precise. But there is no ambiguity as to the issue that was being presented to the district court, which is what was the consequence of this action, this seizure, this arrest, whatever you want to call it. We called it at times a final seizure. We said that there needed to be a final seizure. We're using slightly different language now, being faithful to what Hodari C. says. But there is no ambiguity about the argument the government presented, which is Hodari D. does not permit the exclusion of evidence here. You mentioned the case, Hodari D. There's no doubt about that below. But where in the district court record did the government argue, as it does now, that the policies underlying the exclusionary rule and the fruit of the poisonous tree doctrine do not require suppression? We did not speak specifically in terms of the policies. It was probably alluded to, but the extensive discussion that we present now regarding the Herring case, for example, which was a very recent decision at that point in time, was not discussed. But we did say, for example, page 71 of the appendix, it said, contrary to the dictum in Brown, the Supreme Court has explained that a momentary physical touching of a suspect which the suspect resists is not a final seizure. Now, what I'm saying now is final seizure is perhaps not the best language to use, but it preserves the issue. And what tells us that, and I do read my friends' briefs now that say they didn't know about this issue they call the fruits issue. And yet, in their response to that brief I just quoted at page 91 of the appendix, the defense said to the district court, in light of the continued existence of the initial seizure, the government also appears to argue that the discovery of the firearm was sufficiently attenuated from the illegal initial seizure due to Mr. Dupree's flight. So they saw the argument in the district court that we tried to present. They addressed it. The district court made its decision. Your Honor, there's no purpose to be served here by saying that there's a waiver. You're absolutely correct that there are cases where we come before the court and say, well, they argued one issue A and now they're arguing issue B. That's not the case here. The issue is very clear. It's been fully briefed at this point. And we don't see a waiver. It's been fully briefed here without a doubt. The briefs on both sides are outstanding. But I think there is a point or principle, which is you can't go into a district court and, if you will, tee up the issue or join the issue, by saying one thing and then have the district court pass on the issue under that rubric, and then only to come forward on appeal to this court and ask us to do something different. I mean, I think that's an important institutional concern that we try to vindicate in all cases. That is a very important concern, and I would not suggest that the court should do anything else. But what I do suggest is that the issue was teed up. The issue was teed up is that under Hodari D. and subsequent case law, should this evidence be suppressed? In fact, many pages of our brief in this court are identical to what was submitted to the district court, page for page, verbatim. But then I hope we presented a better brief to this court with the time and the understanding to work on it and to consider hearing and all this new guidance that we're receiving from the Supreme Court. So, yes, that interest is very important, but we don't believe it needs to be vindicated here. Mr. Zalzmer, moving to another question, how do you get around our decision in Coggins? Well, Coggins did not reach this issue that we're presenting. Well, but it rejected the Hodari D. analysis specifically. Well, the government conceded the point is what it all comes down to. The government could have made the argument that I'm making now, perhaps did not have all the tools yet because you didn't have the Hudson decision, Herring decision. But in Coggins, the court said the only issue we're addressing is was there a seizure before the time that the person stood up and took off and then said the government concedes that if there was a seizure at that point, that the evidence is fruit of that trait. We don't concede that here. We have, I think we have the ability to consider our position, consider the recent case law, and make the argument that we're making now. The same argument we're making now, I fully agree, Your Honor, could have been made in Coggins and would have reached a different result. Well, in this case, we have we have a situation where what what is wrong with the looking at this, that he was seized. You acknowledge that this was an arrest when he originally put his hand on him and grabbed him. Then if he hadn't done that, obviously, the defendant would obviously I mean, the defendant ran. So that's the effect of being seized was he took off. And while he was taking off, he discarded the firearm. Now, is that a direct fruit of a poisonous tree? He would have discarded the firearm if he hadn't been improperly, unlawfully arrested in the first place. So why is that contrary to even the dicta in Hadari? And is that consistent with the Third Circuit precedent? Certainly consistent with Ninth Circuit precedent. It was a but for result. No doubt about it. If if he doesn't grab him, he doesn't take off and discard the knowledge that if he were to search when he originally grabbed him and found a gun that would have been suppressed. Yes. All right. So what's the difference between that? He grabbed him. The man took off and he threw away the gun. But the difference, the difference is he broke away and ran. And the question then becomes, do we apply the exclusionary rule? And what the Supreme Court said in Hudson very clearly, and we quoted at great length, is that but for is not the only test of whether the fruit of the poisonous tree doctrine applies simply because the act wouldn't have happened except for the wrongful police action. Yeah, but the theory of the Supreme Court is that the exclusion of evidence is not automatic. It's got to deter improper police conduct. If we follow your suggestion and say that they should not be depressed, that means police officers will find they're at leisure to grab someone. And if the person runs. Well, that's that's fine. If they don't run, they got they'll you know, if he runs like this man, it's going to encourage police grabbing people without probable cause. It's more it's more than that. Your Honor, the court does say we're focused on the deterrent effect. But what it has also made clear in its recent decisions is that it's balancing the cost of the exclusionary rule against whatever deterrent effect is to be had. And so we have to look at this situation, the situation your honor has described. Someone is grabbed. They break free of the police and they run. And the question is, in that context, it does the cost of the exclusionary rule outweigh whatever deterrent effect is to be had. And if I could take a couple more minutes on this with the court's indulgence, my time is up. But this is the core of the argument. A couple of minutes. I'll even give back a couple of minutes. Because this is the core of the argument. If I could fully answer Judge Cowen's question. Thank you very much, Your Honor. The the question is the balancing. That's what Hudson and Herring are all about. And what we have here on the one side is what the Supreme Court has described as the extraordinary cost of application of the exclusionary rule, which is essentially often allowing a guilty person to go free versus the very important purpose of deterring wrongful conduct by the police. But we also have another interest here at stake, and that is encouraging people to comply with orders of the police, even if unlawful, and then properly litigate those issues and vindicate their Fourth Amendment rights. It doesn't serve public policy to encourage people to wrestle with officers in the hope that they can then successfully discard evidence. So our view, and this is what Hodari D. says, our view is that when you balance it in this situation, where somebody throws a bicycle at the police officer and takes off, that in this situation, the cost of the exclusion of evidence, as well as the cost of encouraging that type of conduct, you certainly outweigh whatever minimal deterrent effect is to be had. The deterrent effect is. Do you think that's minimal effect that would have to discourage police officers from illegal grabbing or arresting people? Well, I don't think it's a common phenomenon, and there's been no showing that it is. The police officers are now going to grab people willy-nilly, without any suspicion at all, in the hopes that the person will struggle, break free, run away, and throw evidence. And if I'm not saying this as articulately as I could, it is said articulately in Hodari D., and this is where it's so clear. I think I understand your argument. You're saying that as a matter of applying the exclusionary rule, we should decide this, as opposed to saying that as a matter of law, there was no seizure because he broke free. Which one is it, exclusionary rule or no seizure? Exclusionary rule. We're saying that there was a brief – You admit there was a seizure. There was a brief – So you admit there was a seizure. Yes. But you've also been arguing through Hodari D. that the seizure was broken by the flight.  And then that, in effect, there was no longer a seizure. That's correct. That's what you're saying, Hodari D. said. Correct. Is that still your position? Yes. But you're arguing on both sides of your mouth. First you say there is a seizure, then you say there's no seizure. No, I'm saying there is a – I'm not trying to get your argument out of your mouth. I appreciate the opportunity to be specific. We're saying there was a seizure that was unsuccessful. And when it ended, when the person broke away, he discarded evidence, and the exclusionary rule no longer applies in this particular situation. I'm using the language – So aren't you really saying that the exclusionary rule should no longer apply? I am saying that. As opposed to it doesn't any longer apply? I mean, the issue I'm trying to get to, you're trying to use Hodari D., but I'm trying to get to what purpose you're trying to use Hodari D. To break the seizure or say we shouldn't apply the exclusionary rule. Which one is it? Well, both. Both. I mean, Hodari says both of those things. Hodari – Now I'm confused. Is it your position that after he originally improperly seized him, arrested him, that the man took off, that that seizure is out of the picture, now we start from anew? Essentially, yes. All right. So you're saying that after he broke loose, he's on a lamb, he's no longer seized, and whatever happened then, we start from scratch? Correct. All right. I understand your – And Hodari D., my last point, says both of these – Does that make sense, though? Because he wouldn't have discarded the gun if he hadn't been seized in the first place. Exactly. Hodari D. says both of these things. There's one passage I don't have right in front of me, but the quote that Hodari D. says is that it can't be said that when somebody is seized and then breaks free and discards evidence, that that evidence was the product of that seizure. It's no longer true. That's one quote. The other quote that's important that gets to the second part of what I was discussing with Judge Fischer is the Supreme Court, page 627, that I do have in front of me, says unlawful orders will not be deterred by sanctioning through the exclusionary rule those of them that are not obeyed. Since policemen do not command stop, expecting to be ignored, or give chase, hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures. That is the point that we're making, and that's why I would respectfully suggest the defense didn't really try to say that Hodari D. doesn't address this. I guess one of my problems with your attempted application of Hodari D. here is since Hodari D. in 91, almost 20 years, the Supreme Court hasn't referred back to it in a situation like this, and I can't find any case in any of the federal appellate courts on point to support your position. It makes me wonder about what the Supreme Court really meant when they decided Hodari D. Well, I have two things to say about that, Your Honor. I think that it is interesting that there's not a great deal of case law regarding this scenario, even though it is a scenario that we do see with some frequency. The Supreme Court hasn't addressed it. They haven't accepted a case that addresses it. There are circuit cases on point, Hernandez and Bradley that we discussed. Everybody uses the word seizure a little differently, but they come to the result that the government is advocating here. But that also goes to the question that Judge Cowen presented, and I do appreciate the Court's indulgence here, the question of aren't we going to be encouraging police officers to just go out and grab people. The same issue was before the Supreme Court in Hodari, and the passage of 20 years is helpful there also because I read Justice Stevens' dissent in Hodari. It was a 7-2 decision, but everybody's recognizing Justice Stevens' contributions this week, and it's interesting what he said. One of his reasons, he said, is it's unknown if our decision today in Hodari D, saying that it's not a seizure if the officer makes a show of authority but never touches the person, he said it's unknown if that's going to encourage police officers to go out and just make a show of authority, hoping that people will take off and can then be arrested. And what we know from 20 years of experience is that's not happening. Police officers have better things to do than chase people, grab people, frighten people, as opposed to doing their regular job of investigating the ample crime. All right. Mr. Zausman, we'll have you back for a brief rebuttal. Very brief. Thank you, Your Honor. Mr. Schweitzer. Good morning, Judge Fischer, Your Honors. My name is Brett Schweitzer. I'm from the Federal Defender's Office here representing Appalee, Maurice Dupre. If I may touch just briefly on the waiver point that you were questioning my able co-counsel on, Judge Harneman. First of all, when you look at this record, there can't be any serious dispute that there's a complete reversal. Below, the seizure was contested and fruits were conceded. Now here on appeal, you know, the concession is with respect to the seizure, and we're moving to an argument about fruits. Well, they had a motion for reconsideration. Didn't they bring this up on reconsideration as well? Your Honor, actually, the reconsideration motion reinforces the waiver in this case, and let me explain why. First, the district court, first of all, the prosecutor before the district court at the hearing, at the argument, made express concessions, and that's what you, Your Honor, Judge Harneman, had read from the record. Then in light of that, the district court issued an opinion stating, black and white, the government concedes fruits. If there's a seizure at the grab, there's a concession as to fruits. Now, on the reconsideration motion, the government doesn't come in, as you might expect, if that was some mistaken reading of the record by the district court, and say, no, no, no, we didn't concede that. Instead, what the government says is that it is not a seizure. On page 70 of the record, pursuant to Supreme Court authority, there plainly was no seizure. This is all from the reconsideration motion, and repeated over and over again. Instead, they relitigate, the government relitigates the seizure issue on reconsideration, and then adds this aggravated assault twist that's a wholly new argument on reconsideration. How much clearer could the government have been in raising Hodari D than they were in the district court? It was there. Hodari D was there, and that's not enough, Your Honor. It's not enough to generalize the argument and say, under a case law, or under a certain case, I ought to win, or evidence ought not to come in. Many cases have several holdings. Now, in fact, Hodari D only has one holding. Hodari D is a seizure case, and there can be no dispute about that. We'll talk about that in a few minutes, I'm sure. So that, in fact, misled the court. If you make an argument, as the government did, under Hodari D, it stands for the proposition that the unsubmitted to unheeded command without submission is not a seizure. And then the government reinforced that by, at every turn before the district court, filling out their Hodari D argument by saying this is not a seizure. This is not a seizure. We don't have a seizure here. It can't be said that they argued alternatively that it is a seizure, but even if it is a seizure, their position is once he broke loose, he's no longer seized. He's a so-called free man, and he's like any other person who's not under arrest because he's no longer in their custody. And therefore, when he discarded the gun, that's not the fruit of an illegal search because at that point he's no longer under arrest in custody when he discarded that gun. He's on the lam. And therefore, what occurred originally, as unfortunate as it was, had no effect upon their subsequent arresting him for being a felon in possession. I don't think that's a reasonable reading of their argument, but even if it were, Judge Cowen, the only thing they can point to that even vaguely resembles that is the reconsideration motion. Now, the reconsideration motion comes after an express concession to the district court and a ruling by the district court that there was a concession. So even if we indulge what I would suggest is a rather revisionist view of their argument on reconsideration, it still doesn't get them to the argument before this court because we have a concession. Well, we don't. We're not in the business of telling the district court. We review anything that was before the district court, not only the original primary argument, but what was brought up on reconsideration. And the district court ruled on it so that I respectfully got to say I think that's before us as well, their theory that, yes, he was improperly seized, but that once he broke loose, he's no longer under arrest and all bets are off. He threw away a gun, and we could seize him for being a felon in possession. I mean, if that is before us, assume for the purpose of argument that's before us, what's wrong with that theory of the government that he's no longer seized, he's on his own, he throws away a gun, they arrest him for having a gun? There's nothing wrong with the argument. In fact, when we look at Hodari D., what it really says, it does indicate, again, in dictum, however, it does that language the government points to suggest that the seizure ends. That has nothing to do with fruits analysis. And let me explain. In Hodari D., we need to take a step back, I would respectfully submit. Hodari D., two questions were presented to the Supreme Court. The first, was there a seizure by the command, the unheeded command to stop without submission? The Supreme Court obviously ruled no. The second question presented in that case was even if there was a seizure, was it fruits? The Supreme Court expressly did not rule on that ground. Hodari D. could have been a fruits case. We could be here on a counterfactual situation where Hodari D. really spoke to this issue and arguing the merits of this. But Hodari D. said on that first question that there was no seizure. That's correct, Your Honor, and what that means. All right. Now, Mr. Zausmer here just acknowledged that he was really arguing twofold, that there was not a lasting seizure and that the exclusionary rule should not be applied even if there was one. How is that different than what they argued below if, in fact, they clearly put Hodari D. before the district court? I would suggest – I fail to see the distinction that you're trying to make here on the waiver issue. Well, I believe what was put before the district court was, was this a seizure? And even when you add in the finality of the seizure? He's still arguing here today that it's not a lasting seizure, a la Hodari D. And the argument, I believe, despite what Mr. Zausmer says here at argument, the argument in their brief is purely a fruits argument. And, in fact, Mr. Zausmer, my able colleague, relied today on Hernandez and Bradley, which was expressly disavowed in their brief here on appeal. So I don't know – the argument seems to be shifting. However, I would suggest to the court that what has happened here is a shift of position. And I think that any sort of – any pragmatic reading of the record in light of the fact that the interest of giving to the district court an opportunity to address the real issue is implicated in this case. Now, if we go to Hodari D. Okay, yeah. Why don't you go there? Assuming we allow a shift of position. Okay. Why don't you go there? Very well, Your Honor. The language that the government relies on is with respect to the language that Mr. Zausmer quoted, the continuing arrest, and the Supreme Court says it would hardly be realistic to say that the disclosure had been made during the course of the arrest. I agree. That's not a problem for us. The Supreme Court did not say that it would be hardly realistic to say that the disclosure was not fruit of the arrest. Now, why is that important? Why is that distinction important? Because that language out of Hodari D. is plucked right out smack in the middle of the discussion of what constitutes a seizure. That's what the court is discussing in that passage, and what they're saying is that seizures can end. Seizures can begin. Is it your position that after he broke loose and was running away, is it your position that he was still under arrest? Your Honor, I would not concede that. I think we can start from the position that this language is dictum. That would be my position. It's dictum. But let's assume for the sake of argument that we're just engaging that and we're proceeding on that. So I wouldn't concede that the arrest really ended because I don't think Hodari D. holds that. So he feels that he was still under arrest when he threw the gun away. No, but I'm saying for right now I'm willing to indulge the dictum and say let's engage that and let's talk about that. And what the result of that is is that, yes, the seizure may have ended, but that doesn't mean that the fruit is suppressed. It's a different question. Now, why would the Supreme Court say such a thing? Because they're defining seizure. And there might be certain circumstances in which it's important to recognize that a seizure ends during a breakaway. In other words, one of the things that we do when we look at the Fourth Amendment is we say, what did the police officer know up until the time of the seizure in determining reasonable suspicion? So let's change the facts in our case a little bit. Let's say that the officer, Officer Mabry, had gone up, grabbed Mr. Dupree. Mr. Dupree ran. This five-minute chase ensued. And during that chase, lo and behold, over Officer Mabry's radio comes an exact description by a victim that Mr. Dupree was not suspicious to the grab. And now during that chase, that information comes to the officer. Then the tackle. Then the gun is found. Now, in that situation, the HODORI D language, assuming it's not victim, is instructive. Because what that says is we can consider that radio dispatch in the reasonable suspicion calculation as to the second seizure, because the first seizure ended. That doesn't mean it has nothing to do with fruits. It doesn't mean that evidence precipitated by the initial unlawful seizure can count towards reasonable suspicion. So we don't look at the fact that Mr. Dupree ran, in my counterfactual hypothetical, or anything else. That's classic fruits law. Adopting the government's position here requires taking a wrecking ball to 50 years of attenuation doctrine. There's just really no way around that. The government tries to sort of say, well, doctrinally maybe, but it's cabined to this specific situation because, in my view, they wrongly read HODORI D, this language, as relating to fruits. All right. Does the attenuation doctrine determine the appropriateness of the exclusionary rule? Absolutely, Your Honor. And in this case, they're really ‑‑ I take the government's argument to be that they don't really have a dispute that under a traditional attenuation analysis that the gun would be suppressed in this case. I didn't hear a lot of argument about that. But, in fact, when we look at the factors, as the Court had reiterated them in Mosley, what we're talking about, and this has been the law for decades, what we're talking about is the proximity. We're talking about unrelated intervening acts. And we're talking, most importantly, I would say here, the flagrancy and the intentionality of the police misconduct. That's really what distinguishes. My able colleague talks about the recent Supreme Court cases of Hudson and Herring and how things are changing and so forth. That all relates to ‑‑ what those cases boil down to is there's no deterrent effect to trying to exclude evidence, either based on a remote, unrelated, negligent error. It doesn't happen at the situs of the encounter. That's Herring. That's the court‑clerk error with respect to withdrawing the warrant. And in Hudson, what we have is how can we possibly be deterring misconduct through the exclusionary rule when the violation is a knock and announce, when there's a warrant, when there's a valid warrant that would have been executed no matter what. The government argues that your argument is going to encourage people to run instead of lawfully litigate in court the legality of a search and that it's going to cause more problems than police officers potentially violating the Fourth Amendment by grabbing people without. I mean, you can see that if we uphold this suppression, someone who's under surveillance is going to run or not going to allow himself to be arrested and it could cause a lot of confusion and violence. Your Honor, I guess my response to that would be application of the exclusionary rule is not a free‑for‑all policy decision that courts make. It is within certain strictures. Now, I agree with my colleague. There is a cost‑benefit aspect. There's a deterrence aspect. But what I believe the government fails to realize here is there's no analytical ‑‑ there is deterrence here. There is intentional deliberate police conduct, non‑remote, causally directly related, miles away from anything like in Hudson or Herring. And there's no analytical difference between, you know, from a deterrence standpoint, between whether post‑seizure the defendant flees or not. Now, there is the language, as my colleague had pointed out, in Hodari D. saying we want to encourage compliance with even unlawful commands to stop. And that's true. Now, what the difference, though, is, and again, I believe it's important, we're taking these little snippets out of Hodari D. And I think it's incredibly important that we be careful about doing that. Well, that's going to be a big problem for us when we conference on this. Obviously, a number of the circuit opinions are very favorable to you, maybe not the ninth or one or two, but you've got some very strong circuit law in your favor. On the other hand, you're looking down the muzzle of a Supreme Court, if you call it dicta, which as much as you may try to distance yourself from it or avoid it, sidestep it, a circuit judge is going to look at that ten ways from Sunday and not want to do something that the Supreme Court has said is a no‑no. How do you suggest we resolve whatever circuit law is in your favor, with maybe a ninth and a few other exceptions, when we're looking down the barrel of Supreme Court dicta that is almost, maybe not totally on point? I would encourage your honors to not be mistaken about what that language says. And when you step back, and this is why I'm concerned about taking snippets out of Hodari D, when you step back and we realize that there was an entire question presented in Hodari D that the Supreme Court expressly declined to decide. In other words, fruits. Is it really likely that this language, which there's a perfectly reasonable and accurate alternative explanation for, that's my discussion about what goes into the reasonable suspicion analysis, is it really likely in a case like that that the Supreme Court is taking a position that is absolutely at odds with 50 years of attenuation law? So, your honor, I guess my answer to that would be, in a nutshell, when you're looking down the barrel of Supreme Court dictum, make sure we understand what it says, make sure we're accurately characterizing it, and don't jump to conclusions that would be at odds with an incredibly wide body of law. And that's what is, in fact, at issue in this case. Thank you, your honors. If there are any questions. Do you think Coggins helped you? Absolutely, your honor. Coggins, we did not portray. We were very careful, I believe, in our briefing. We don't portray Coggins as controlling,  but there really can be no doubt that the court, and, again, Coggins is post-Hadarri-Dee, that Coggins, it was integral to their analysis. In other words, they only reached, this court only reached the issue of the validity of the original search. But it's dicta. You acknowledge it's dicta. Yeah, I do. I'm not going to say Hadarri-Dee is dictum and come back and say, but you can decide this case on Coggins as a precedential direct. But it certainly will provide yet another disparity in this court's case law. And the point, really, being Coggins is absolutely correct. So even though the court didn't have to reach the issue because it elected to decide it on the seizure, on the validity of the seizure, it clearly, and for good reason, and I would suggest not merely because there was a government concession, it's plainly the law. Thank you, Mr. Schweitzer. Mr. Zausmer. Let me interrupt you before you can even say anything, Mr. Zausmer. Hudson is important to your argument, is it not? Yes, it is, Your Honor. What did the district court say about Hudson? The government did not cite Hudson to the district court, Your Honor. It's so important to your case that you didn't cite it to the district court, but yet you're telling us you teed up that issue before the district court. Your Honor, the issue was teed up as to the application of the exclusionary rule. Our briefing in the appellate court is better. That is not our goal. That's not what we try to do. We try to be as thorough in the district court as we are at any level. It wasn't as good here. But that's not the waiver test, in my understanding, Your Honor. But is the waiver test that the mere citation of a precedent, even if you argue that precedent for a completely different proposition, is sufficient to preserve the issue? If somebody mentions Marbury v. Madison, but the case is not about the federal court's power of judicial review, is it enough to argue the different issue, even when the different issue is something that was conceded in the court below? No, Your Honor. It's not enough to just cite a case for a different proposition. But here, as I've said, the only proposition for which we cited Hodari D. was the proposition that evidence in this specific situation should not be excluded. Our language could have been more precise. The Bradley and Hernandez cases, which Mr. Schweitzer says we're going against, their language could have been more precise. And we've been consistent in saying that those cases support the ultimate conclusion in this case. The conclusion was that it shouldn't be suppressed. I agree with you. But I don't think that was the argument. The argument was that there was no seizure when he initially grabbed the defendant on the bicycle. And your government counsel argued that that was the issue in the case. Your Honor, I just don't agree. A lot was said in the district court. For example, at page 209 of the appendix, the prosecutor said, even in custody, let's use custody, he is not in custody here because custody is a finite action. Custody is not a continuing process. That's virtually a quote from the Supreme Court's Hodari D. decision where it says that there's no such thing as a continuing arrest. And here the prosecutor says custody is not a continuing process. At page 215 of the appendix, the prosecutor says, so the initial grab, which was unsuccessful, is not determinative because the defendant never submitted to authority. He breaks from the grab, throws the bike at Officer Mabry, and then proceeds to flee. That's almost verbatim what I said to this court earlier this morning. Then why on reconsideration did you not take issue with the district court's written statement, in its opinion, that fruits were not at issue? I don't know that the district court said it that explicitly. We certainly took issue with the district court's conclusion and argued that the mere fact of the brief momentary unsuccessful seizure was not sufficient. Could we have said it better? Could we have said it more clearly? Absolutely, I think we have in the briefs that we submitted here. But I'm sorry, Your Honor, I just cannot agree that the government did not preserve this issue. With respect to my brief rebuttal, all I'll say is that, first of all, Judge Cowan, I do continue to disagree that there is ample case law supporting the defense position here. I know the court will scrutinize the briefs here, our reply brief and their brief, and I think looking at those cases, they do not support the defense position. In this context of an unsuccessful seizure, I don't know of any appellate authority other than that one Wilson case in a one-paragraph statement that disagrees with the position that I've presented. In terms of the deterrent effect, again, I can rest on HODAR ID. What we have here is seven justices of the Supreme Court subscribed to the statement that unlawful orders will not be deterred by sanctioning through the exclusionary rule those of them that are not obeyed. I, again, say that we at our peril would just say that we cannot follow that guidance and should not follow that guidance. That's the odd posture of this case that I mentioned at the outset of my argument, and I conclude with that, and I appreciate Your Honor's attention. We thank both counsel for excellent arguments, and we will take the matter under advisory. The court will stand in recess for five minutes.